IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                         Plaintiff,

       v.

MICHAEL L. MIKULEWICZ,

                      Defendant.

REPORT AND
RECOMMENDATION

07-CR-89-S

_____

## REPORT

      The grand jury has brought charges related to methamphetamine trafficking against defendant Michael L. Mikulewicz.  Before the court for report and recommendation is Mikulewicz's motion to suppress evidence acquired during execution of a state search warrant issued for Mikulewicz's Buick LeSabre.  For the reasons stated below, I am recommending that this court deny this motion.

      On September 13, 2007, this court held an evidentiary hearing.  Having made credibility determinations after having heard and seen the witnesses testify, and having considered all the documents and exhibits submitted by both sides, I find the following facts:

## FACTS

      Michael Mikulewicz lives in Washburn County, Wisconsin and owns a strip club named the "Jack of Diamonds" (the Club).  Starting about 2003, Mikulewicz shared his residence with his then-girlfriend, Brandy Colegrove, one of the strippers at the Club.  State and local law enforcement officers had obtained information from various sources indicating that Mikulewicz and others (including a target named Charlie Frank and some strippers who worked at the Club)

were distributing methamphetamine.  Agent James Ohm of Wisconsin's DOJ/DCI ultimately led this investigation, and was familiar with the players, including Mikulewicz and Colegrove. Agents had an informant buy methamphetamine from Colegrove on April 5, 2004.  Colegrove also was a methamphetamine addict; in 2005 she stole money from the Club, allegedly to feed her habit (a motive she later denied).  The video security system in the Club caught some of Colegrove's thefts on tape.  As a result, on January 27, 2005 the Washburn County District Attorney filed a misdemeanor theft charge against Colegrove.[1]  Mikulewicz and Colegrove continued to live together after Mikulewicz discovered and reported the theft.

In hindsight, perhaps he wishes he had not.  On March 8, 2006, Colegrove stormed into the Washburn County Sheriff's Department to complain that Mikulewicz had engaged in nonconsensual videotaping of Colegrove and nonconsensual audio taping of her telephone calls with other people.  Investigator Austin Parenteau met with Colegrove.  Colegrove explained that she just had discovered at her (and Mikulewicz's) home a set of videos capturing her image and words on tape at home and at the Club, and a cassette tape intercepting many of her phone conversations with other people.  Investigator Parenteau provided Colegrove with statement forms and sent her home to fill them out.

Colegrove returned that same afternoon with her mother in tow as a corroborating witness.  Colegrove expanded on her allegations, accusing Mikulewicz of paranoid, frightening surveillance of Colegrove and her friends.  Not sure whether these alleged intercepts were illegal,

---

[1]  On April 6, 2005, after the challenged warrants in this case, Colegrove entered into a deferred prosecution agreement requiring her to repay $1,300.00 to Mikulewicz, obtain drug treatment, and otherwise remain law-abiding. On August 3, 2006, Colegrove successfully completed her "contract," leading the DA to reduce the charge to a forfeiture disposition.

Parenteau consulted with the Washburn County District Attorney.  He also called DCI Agent Ohm.  During the phone call, Investigator Parenteau advised Agent Ohm of Colegrove's pending theft case in which Mikulewicz's club was the victim.  Investigator Parenteau put Agent Ohm on the speaker phone to participate in his interview of Colegrove and her mother.  The Colegroves confirmed that the tapes they both had seen and listened to all contained audio portions capable of being overheard, and to which Mikulewicz had not been a party.  Following this conference, Agent Ohm contacted an assistant attorney general familiar with Wisconsin's wiretapping statutes to inquire whether this evidence amounted to a possible criminal matter and whether it would be appropriate to search for evidence.  Apparently the answer was "yes."

At some point after the interviews, Colegrove provided Investigator Parenteau with one of the cassettes she had discovered that contained intercepted phone calls between her and other people.  Investigator Parenteau listened to the tape.

Interested in proceeding further, Agent Ohm traveled to Washburn County the following day, March 9, 2006, to meet Colegrove.  At some point that day he listened to the audiotape of the phone calls that Colegrove alleged had been intercepted by Mikulewicz, satisfying himself that this actually was a set of unconsented interceptions.

Colegrove told Agent Ohm that Mikulewicz worked out of the trunk of his car[2] and that she had seen cassettes and videotapes in the trunk as recently as March 6, 2006.  Agent Ohm knew from Colegrove's admissions that she had been a methamphetamine user in the past; she

---

[2] In her March 8, 2005 statement, Colegrove wrote "works out of his truck," but later explained to Agent Ohm that she misspelled "trunk."  This is logical from context and I accept it as an accurate revision.

3

also claimed to have been clean and sober for 4 months.  Agent Ohm, a methamphetamine specialist familiar with the symptoms of methamphetamine intoxication, saw no symptoms of drug use by Colegrove during their meeting.

Agent Ohm prepared a search warrant affidavit which he presented to the county circuit court on March 9, 2007.  *See* Gov. Exh. 3.  Ohm sought to search the Club, Mikulewicz's residence and his car for evidence related to the unlawful interception of communications, including tapes, discs and equipment used for oral interceptions, cameras, microphones, and equipment used surreptitiously to videotape patrons at the Club.  According to the affidavit, these items might constitute evidence of the unlawful interception of wire, electronic or oral communications, a felony pursuant to Wis. Stat. § 968.31(1)(a).  In support of his application, Agent Ohm repeated the gist of Colegrove's allegations and vouched for her reliability:

> Your affiant believes Ms. Brandi Colgrove [*sic*] is accurate and reliable, because she is a private citizen who has lived with Mr. Mikulewicz for the last three (3) years; because her allegations were corroborated by her mother, Ms. Beverly Colgrove, who is a long time citizen of Washburn County; *because Ms. Brandi Colgrove produced audio taped evidence confirming her allegations against Mr. Mikulewicz*; and because Ms. Colgrove has in the past provided statements against her own penal interest to your affiant.

Gov. Exh. 3 at ¶ 3, emphasis added.

The reference to statements against interest was meant to encompass Colegrove's admissions that she used to use meth (although she also claimed that this had not been her motive for stealing from the Club because according to her, Mikulewicz fed her habit for free). Agent Ohm did not apprise the court of Colegrove's pending theft charge.  Finally, Agent Ohm,

based on 19 years of law enforcement experience, opined that people who make surreptitious recordings often conceal their tapes in their homes, businesses or vehicles.

The court issued the warrant that evening. Mikulewicz was subjected to a traffic stop and arrested; Agent Ohm, Investigator Parenteau and Investigator Pete Frey (a drug investigator) transported Mikulewicz's LeSabre to the sallyport of the county law enforcement center for a search. Due to the timing of the warrant and the seizure, the actual search did not begin until after midnight.

The agents were searching for tapes, recorders, and anything else that could be used for to tap into a telephone or camera system; this some of this equipment could be as small as the fingernail of a person's little finger. In the front seat, agents found cassette tapes suitable for recording; in the back seat they found VHS tapes suitable for the same purpose. Investigator Parenteau found a plastic bag containing cassette tapes, as well as a bag that contains a substance Investigator Parenteau recognized as marijuana. Investigator Parenteau was familiar with controlled substances due to his investigation of controlled substance crimes in the county. Almost simultaneously, Investigator Frey found in the console a "one-hitter" that he recognized as paraphernalia used to ingest cocaine or methamphetamine.

In light of these discoveries, the agents predicted they would find additional evidence of drug crimes. It already was 3:00 in the morning, they were tired and decided to call it a night. The next morning, they prepared a fatally terse affidavit for a new warrant to search Mikulewicz's LeSabre for drug evidence. The government has disavowed this application and the resulting warrant, so it is not part of the analytical mix.

5

When the agents continued their search the next day, they found some methamphetamine in rock form in a black briefcase located in the trunk.  Investigator Frey immediately recognized the substance as methamphetamine.  Agents also found a plastic bag containing drug paraphernalia such as glass pipes, marijuana pipes, one-hitters, razor blades, gem packs and a digital scale.

## ANALYSIS

Mikulewicz originally moved to quash both search warrants for his car but has narrowed his focus to the first warrant in light of the government's concession that the second warrant was invalid.  Mikulewicz contends that the first warrant was invalid because there was insufficient evidence establishing that the LeSabre might contain evidence of unlawful interceptions, and because Agent Ohm tainted his own affidavit by materially misrepresenting Colegrove's reliability.  Mikulewicz also contends that Agent Ohm misstated his own experience with people who made unlawful surreptitiously interceptions, pointing out the rarity of unlawful interception prosecutions in Wisconsin.  If the first warrant falls, then the government's resort to the plain view recovery of the drug evidence must fail.

### I. Probable Cause Overview

To uphold a challenged search warrant, a reviewing court must find that the affidavit provided the issuing court with a substantial basis to determine the existence of probable cause. This standard requires review for clear error by the issuing court. "We will not invalidate a warrant by interpreting the affidavit in a hypertechnical rather than a common sense manner."

6

*United States v. Walker*, 237 F.3d 845, 850 (7th Cir. 2001).  Doubtful cases are resolved in favor

of upholding the warrant.  *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

Probable cause to support a warrant exists if the affidavit sets forth sufficient evidence

to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.

The inquiry is practical, not technical.  *United States v. Watzman*, 486 F.3d 1004, 1007 (7th Cir.

2007).  As the Court noted in *Brinegar v. United States*, 338 U.S. 160 (1949),

> In dealing with probable cause, . . . as the very name implies, we
> are dealing with probabilities.  These are not technical; they are the
> factual and practical considerations of everyday life on which
> reasonable and prudent men, not legal technicians act.

*Id.* at 175.

This is a low evidentiary threshold, requiring only a probability or a substantial chance of

criminal activity, not an actual showing of such activity. *United States v. Roth*, 201 F.3d 888, 893

(7th Cir. 2000), *quoting Illinois v. Gates*, 462 U.S. 213, 244 (1983).  A probable cause

determination does not require the resolution of conflicting evidence that the preponderance of

evidence standard requires.  *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003).


**II. Colegrove's Credibility**

How should this court characterize Colegrove?  Is she a crime victim or an untested

informant?  As Mikulewicz argues, the distinction *could* make a difference.  Generally, crime

victims are deemed credible reporters:

> When police officers obtain information from an eyewitness or
> victim establishing the elements of a crime, the information is
> almost always sufficient to provide probable cause for an arrest in

7

the absence of evidence that the information, or the person providing it, is not credible. When probable cause has been gained from a reasonably credible victim or eyewitness, there is no constitutional duty to investigate further.

*Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir. 2001)(a § 1983 civil lawsuit for false arrest*).*

But, as Mikulewicz gleefully trumpets at great length, there *is* evidence here that Colegrove is not credible, or at least that there is reason for an outsider to question the accuracy of her accusations against her too-possessive boyfriend who turned her over to the police as a thief but who continued to live with her and eavesdrop on her. The Mikulewicz-Colegrove love-hate relationship defies easy categorization (or understanding) by outsiders–has it ever been otherwise?[3]–but I will give Mikulewicz the benefit of the doubt and approach Colegrove as if she were a first-time informant presumptively subject to skepticism. *See, e.g., United States v. Peck*, 317 F.3d 754, 756  (7th Cir. 2003) (untested informant with an admitted grudge against defendant did not provide enough specific details about defendant or his alleged drug dealing to establish probable cause); *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002)(no probable cause from conclusory statements by untested informant who presents no indicia of reliability; however, good faith doctrine rescues the warrant).

But although an untested anonymous informant initially must be deemed of unknown reliability, once police corroborate material facts not readily knowable to the general public, the informant's tip assumes a high degree of reliability. *Illinois v. Gates*, 462 U.S. at 244. Police

---

[3]           *Odi et amo.  Quare id faciam fortasse requiris.*
            *Nescio, sed fieri sentio, et excrucior.*

            Catullus, Poem 85.

8

corroboration sufficiently reduces the chance that the informant is telling a reckless or prevaricating tale. *Id.* To the same effect, the Seventh Circuit has directed that in determining the reliability of an informant's tip, courts should consider the degree to which police corroborated the informant's statements, the degree to which the informant is relaying first-hand information, the amount of detail provided by the informant, the time lag involved, and whether the informant testified in person before the judge. *United States v. Koerth*, 312 F.3d at 866.

Here, the agents obtained from Colegrove corroboration in the form of the *corpus delicti* of a completed state law felony: she handed the agents a cassette containing unconsented recordings of Colegrove's telephone conversations with other people, including conversations apparently inculpating Colegrove in meth sales, hardly the sort of evidence Colegrove would fabricate simply to get Mikulewicz in trouble. Wis. Stat.§ 968.31(1)(a) criminalizes the intentional interception of any wire, electronic or oral communication. The cassette tape was the criminal equivalent of *res ipsa loquitur*.

As a result, it is irrelevant whether Agent Ohm aired any or all of Colegrove's dirty laundry in his warrant application. Therefore, the first five pages of the defense reply brief (dkt. 21) are valueless because Mikulewicz labors under the misapprehension that the more he smears Colegrove, the greater the *Franks* violation by Agent Ohm and the less sound the search warrant that resulted. There was no *Franks* violation here. An omission from a warrant affidavit is considered "material" if the court would not have authorized the warrant had it known the omitted facts. *Shell v. United States*, 448 F.3d 951, 954 (7th Cir. 2006); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 970 (7th Cir. 2003) ("In order for a party to establish a *Franks* violation,

there must be a reasonable probability that a different outcome would have resulted had omitted information been included in the affidavit"); *United States v. Pace*, 898 F.2d 1218, 1232-33 (7th Cir. 1990)(an omission is material when "if the fact were included, the affidavit would not support a finding of probable cause").

Agent Ohm could have included in his warrant application every single impeaching fact–true or not–proffered by Mikulewicz against Colegrove and it would have not affected the court's probable cause determination a whit. So what if Colegrove were a meth addict who stole $1300 of her Sugar Daddy's cash to pay for drugs? The police possessed and had listened to a recording of Colegrove's phone calls with third parties intercepted by Mikulewicz. This is the evidentiary equivalent of a junkie snitch charged with drug crimes handing the police a tape recording of her dealer saying "thanks for the two hundred dollars, here's your eightball of crack." Probably enough to convict, definitely enough to establish probable cause of a crime.

The bottom line is that Agent Ohm provided sufficient information to establish probable cause that Mikulewicz repeatedly violated § 968.31(1)(a), and Agent Ohm did not withhold information that was genuinely material to the court's probable cause determination. This is not a basis to quash the warrant or suppress evidence.

## III. Nexus to the LeSabre

Mikulewicz challenges the alleged nexus between his LeSabre and any evidence of unlawful interceptions. I conclude that the warrant sufficiently established this link. The Fourth Amendment's particularity clause requires the government to limit the scope of its searches to

the places in which there is probable cause to believe that evidence may be found.  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987):

> The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought.

*U.S. v. Reddrick*, 90 F.3d 1276, 1281 (7ᵗʰ Cir. 1996 ), *quoting Zurcher v. Stanford Daily*, 436 547, 556 (1978).  It is up to the police to make a sufficient showing that the described items are to be found in a particular place.  *United States v. Nafzger*, 965 F.2d 213, 214 (7ᵗʰ Cir. 1992).  There is no probable cause to search a location absent information linking the illegal activity to the place to be searched.  *See United States v. Johnson*, 289 F.3d 1034  1039 (7ᵗʰ Cir. 2002).

Here, Colegrove said she had seen cassettes in the trunk of Mikulewicz's LeSabre within the past three days, and that Mikulewicz "worked out of his [trunk]."  Even ignoring Agent Ohm's proffered expert opinion on where an illegal eavesdropper might conceal his recordings, this was enough to establish probable cause to search Mikulewicz's car.  Keep in mind, "all that is required for a lawful search is *probable* cause to believe that the search will turn up evidence or fruits of crime, not certainty that it will." *United States v. Ramirez*, 112 F.3d 849, 851-52 (7ᵗʰ Cir. 1997)(emphasis in original).  Although people often use "probable" to mean "more likely than not," probable cause does not require a showing that an event is more than 50% likely.  *See United States v. Garcia,* 179 F.3d 265, 269 (5ᵗʰ Cir. 1999); *see also United States v. Funches*, 327 F.3d 582, 586 (7ᵗʰ Cir. 2003) (probable cause determination does not require resolution of conflicting evidence that preponderance of evidence standard requires); *Edmond v. Goldsmith*, 183 F.3d 659, 669 (7ᵗʰ Cir. 1999)(Easterbrook, J., dissenting) (probable

cause exists somewhere below the 50% threshold).  Under this forgiving standard, it was constitutionally reasonable for the state court to authorize the search of any location under Mikulewicz's control in which audio or video cassettes recently had been seen.

## IV. **Plain View**

Having successfully defended the legality of the search of Mikulewicz's car for evidence of unlawful eavesdropping evidence, the government next has the burden of persuading the court that it was proper for the agents to seize the evidence of drug use and trafficking.  The Fourth Amendment forbids general warrants, instead requiring that search warrants particularly describe the items to be seized. A warrant must provide sufficient guidance to allow reasonable certainty as to what types of items or documents may be seized. *Russell v. Harms*, 397 F.3d 458, 464 (7th Cir. 2005).

Even so, searching agents are not necessarily limited to the types of documents and items actually listed in the warrant.  They also may seize additional evidence that falls within the plain view doctrine, which allows an agent to seize any additional object or document if: (1) the agent has a legal right to be in the place whence he sees this item; (2) The officer has a lawful right of access to the object itself; and (3) The object's incriminating nature is immediately apparent to the agent.  *Id.* at 465.  "The incriminating nature of an object is 'immediately apparent' if, under the circumstances, the officer has probable cause to believe that the item is linked to criminal activity." *Id.*  Put another way, agents may seize any item that, under the circumstances known to them, they have probable cause to believe was evidence of a crime.  *Id.*  The plain view

12

doctrine is not limited to actual contraband.  So, if the searching agents, based on what they already knew, had probable cause to believe that certain items were *evidence* of unlawful drug use or distribution, then they were justified in seizing them.

I have determined that the warrant to search Mikulewicz's LeSabre for evidence of illegal interceptions was valid.  Therefore, the agents had a legal right to be rummaging through the passenger compartment and trunk of the car, looking in every closed container for items that could be smaller than a thimble.  In light of such unfettered access, the remaining question is whether veteran drug agents knew what marijuana and methamphetamine looked like, or knew the evidentiary value of one-hitters, glass pipes, gem packs, digital scales and razor blades.  These questions answers themselves.  It was lawful for the agents to seize the evidence that Mikulewicz has moved to suppress.

## RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Michael Mikulewicz's motion to suppress evidence.

Entered this 19th day of October, 2007.

BY THE COURT:
/s/
STEPHEN L. CROCKER
Magistrate Judge

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of                                                                                         Telephone
STEPHEN L. CROCKER                                                                          (608) 264-5153
U.S. Magistrate Judge

October 19, 2007

Robert Anderson
Assistant United States Attorney
P.O. Box 1585
Madison, WI 53703-1585

Stephen Meyer
Meyer Law Office
10 East Doty Street, Suite 507
Madison, WI 53703

Re:___United States v. Michael Mikulewicz
        Case No. 07-CR-089-S

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the
United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an
opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the newly-updated memorandum of the
Clerk of Court for this district which is also enclosed, objections to any portion of the report
may be raised by either party on or before October 29, 2007, by filing a memorandum with
the court with a copy to opposing counsel.

If no memorandum is received by October 29, 2007, the court will proceed to
consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/ S. Vogel for

14

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:     Honorable John C. Shabaz, District Judge

15